# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GEORGE J. CONNELLY, JR. *and* WILLIAM REIDELL | No. 3:16-cr-125 (MPS) |

### RULING ON DEFENDANTS' MOTIONS
### FOR JUDGMENT OF ACQUITTAL

At the close of the government's case, both defendants moved for a judgment of acquittal under Rule 29 on all counts. I reserved on the issue at that time. Connelly did not put on a case, but Reidell did. At the close of all evidence, both defendants renewed their Rule 29 motions. I again reserved, and the case was submitted to the jury. The jury convicted Connelly on Counts One, Two, and Four of the Indictment and Reidell on Counts One and Two of the Indictment. For the reasons that follow, I DENY the defendants' motions.

I. **Legal Standard**

Under Federal Rule of Criminal Procedure 29, a "court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In ruling on Rule 29 motion, a court must "[v]iew[] the evidence in the light most favorable to the government and draw[] all reasonable inferences in support of the jury's verdict . . . [to determine if] a rational trier of fact could have found the elements of the charged crimes proven beyond a reasonable doubt." *U.S. v. Anderson*, 747 F.3d 51, 54 (2d Cir. 2014). Because the defendants made their motions at the close of the government's case, at which point I reserved

decision, I "must decide the motion on the basis of the evidence at the time the ruling was reserved," Fed. R. Crim. P. 29(b), meaning that I will not consider Reidell's testimony for the purposes of these motions.

## II. Discussion

### A. Conspiracy Count

#### 1. *Connelly*

Count One of the Indictment charged Connelly with Conspiracy to Commit Interstate Transport of Stolen Property. Connelly argued that the government had not introduced sufficient evidence for a rational factfinder to find that he had knowledge of the purpose or aims of the conspiracy, namely that the stolen goods were going to be transported outside of Connecticut. But I find that the evidence that Connelly knew both that the property Ace Amusements acquired from "boosters" was stolen and that it would be resold to others outside of Connecticut, when viewed in the light most favorable to the government, was sufficient for a reasonable jury to convict him on this count.

To prove that Connelly knew these items were stolen, the government introduced evidence that Connelly regularly bought new, in-box items that had various security devices attached, including "spider wrap," from sellers he knew or suspected were addicted to drugs and whom he referred to as "boosters" and "junkies." It also introduced evidence that Connelly removed the security devices from the boxes and, when doing so triggered a loud alarm, smashed the devices with a hammer. There was also evidence that the "boosters" regularly brought the same types of items into the store and routinely accepted one-third of the retail value for these items, which Connelly or Mr. Muzyka paid in cash, before reselling the items for one-half of the retail value.

To prove that Connelly knew that Reidell and others were reselling these items online—and, therefore, most likely outside of Connecticut—the government introduced evidence that Connelly was present in the store while there was "chatter" among the online resellers about which products were selling well and that he responded by raising the prices that Ace charged the resellers for those items. A reasonable juror could infer from this evidence that such "chatter" was overheard by Connelly and included discussion of online sales—a fact suggesting movement of goods in interstate commerce. The government also introduced evidence that Connelly and Muzyka set aside items in bags or in boxes for large, repeat resellers to pick up, in quantities that suggested the resellers were not personally using the items.

As the jury was instructed, the knowledge requirement for the conspiracy charge would have been satisfied by proof beyond a reasonable doubt "that the defendant acted with a conscious purpose to avoid learning the truth about the unlawful purpose and acts of the conspiracy." (ECF No. 130 at 37.) There was evidence that Connelly, after 2010, refused to accept goods with "spider wrap" but that he would accept the same goods when a booster left the store with the "spider-wrapped" item, only to return a few minutes later with the same item but without the "spider wrap." I find that the government's evidence, when viewed in the light most favorable to it, was sufficient for a reasonable jury to find that the knowledge requirement was satisfied, either by actual knowledge or by conscious avoidance, and to convict Connelly on Count One.

2. *Reidell*

Count One of the Indictment also charged Reidell with Conspiracy to Commit Interstate Transport of Stolen Property. I find that the government also introduced sufficient evidence for a rational trier of fact to convict Reidell on this count. First, through Rhieu's testimony, the government introduced Reidell's interview statements. In that interview, Reidell admitted to

knowing that the goods that he bought at Ace Amusements were probably stolen. He also admitted that he knew that some of the people who sold goods to Ace were "junkies" or "shoplifters." Based on that evidence, along with evidence about the frequency with which Reidell visited Ace, his knowledge of its pricing scheme, his online sales of the goods to customers in other states and other countries, communications that he received from IP enforcement personnel of various products as well as online buyers suggesting that the products were stolen, and his continued reselling activity after being interviewed by the FBI, I find that a rational jury could similarly have found beyond a reasonable doubt that Reidell conspired to commit the interstate transport of stolen goods.

B. Substantive Counts

1. *Connelly*

Connelly also moved for a judgment of acquittal on Counts Two through Four of the Indictment. The jury acquitted Connelly on Count Three, which charged him with interstate transport via Paul Muzyka as the online reseller. It convicted him, though, on the other two substantive counts, which charged interstate transport with "J.R." (John Roberto) and William Reidell as the online resellers. Connelly argued that the government did not introduce any evidence that he had anything to do with transporting stolen property across state lines or internationally. I find that the evidence, viewed in the light most favorable to the government, was sufficient for a rational trier of fact to find beyond a reasonable doubt that Connelly committed this offense.

To meet its burden on this count, the government needed to prove that the goods at issue were stolen, that the defendant transported or transmitted (or caused to be transported or transmitted) the property in interstate commerce, that, at the time of transmission, the defendant knew the property was stolen, and that the property's value exceeded $5,000. Based on the

evidence discussed above, I find that there was sufficient evidence for a rational jury to find that the goods sold at Ace Amusements were stolen and that Connelly knew they were stolen when he sold them to the resellers. The government also introduced extensive evidence showing that the value of the goods sold at Ace exceeded $5,000—with respect to each of Counts Two, Three, and Four.

As to the transportation or transmission element, Connelly argued that the government introduced no evidence that he was involved personally in the interstate transport of the stolen property or that he knew that the people to whom he sold the stolen goods would transport them outside Connecticut. As noted above in the discussion of the conspiracy charge, there was sufficient evidence—including Lance Williams' testimony about the chatter of the resellers about their online sales in Connelly's presence—from which a reasonable juror could infer that Connelly knew the goods would move interstate. In any event, however, with respect to the substantive counts, "[t]he defendant need not have intended or known of the property's movement in interstate commerce. Nor is it required that the defendant actually have physically transported the property across state lines. The government satisfies its burden of proving this element if it proves beyond a reasonable doubt that the defendant caused the property's movement across state lines, or performed a substantial step in furtherance of its journey." (ECF No. 130 at 44–45.) The government introduced evidence that was plainly sufficient for a reasonable jury to find that Connelly caused or performed a substantial step that furthered the stolen property's transportation in interstate commerce because it introduced evidence that: (1) Ace Amusements was the source of stolen goods resold by both Roberto and Reidell; (2) Connelly and Muzyka saved certain items for large individual resellers, such as Roberto and Reidell, further assisting the goods' movement in interstate commerce; and (3) Connelly was present at Ace while the resellers engaged in

5

"chatter" about which items were selling well online, and Connelly adjusted prices for those items accordingly. The government also introduced ample evidence that the goods were then sold online and shipped to buyers outside of Connecticut. This evidence, viewed in the light most favorable to the government, was sufficient for a rational factfinder to convict Connelly on this count.

### 2. *Reidell*

Reidell also moved for a judgment of acquittal on Count Two, which charged him with the interstate transport of stolen property. As I have already discussed, the government introduced a significant amount of evidence that Reidell transported the property at issue across state lines: it introduced substantial evidence, including evidence of cash withdraws and Paypal expenses for postage costs, that Reidell sold items he had purchased at Ace Amusement on eBay and then sent them to buyers in other states and also abroad. Reidell, though, argued that the government had not introduced evidence that was sufficient for a reasonable jury to find that he knew the items were stolen at the time of transmission.

But the government was permitted to satisfy the knowledge element of the interstate transport count by proving that Reidell consciously avoided learning to whether the goods were stolen. As the jury was instructed, "[i]f you find that the defendant was aware of a high probability that the goods sold at Ace Amusements were stolen and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly." (ECF No. 130 at 46.) As discussed above, the government introduced testimony from Rhieu about Reidell's statements that he knew the goods at Ace were "probably stolen" and that the people who sold items to Ace were "junkies" or "shoplifters." There was also evidence that Reidell was well-informed about the value of the goods, which, together with evidence of the price he paid for them, would have permitted a reasonable juror to infer that he was aware of a high probability that they were stolen. The

government also introduced emails from customers and from brand IP enforcement personnel for some of the products that Reidell sold that would have at least put him on notice that some of the items he purchased from Ace were likely stolen. I find that these facts were sufficient for a rational trier of fact to find that Reidell knew the goods he had bought at Ace were stolen at the time that he sold them and shipped them outside of Connecticut.

## III. Conclusion

For the reasons stated above, I DENY Connelly's and Reidell's motions for a judgment of acquittal under Rule 29.

IT IS SO ORDERED.

                                                                   /s/
                                          Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
               May 25, 2018